Agnes, A.J.
1. Two of the several defendants in this medical malpractice action — Pradeep Nazarey, M.D. and Andras Sandor, M.D. (defendants) — have filed motions for Summary Judgment under Mass.R-Civ.P. 56 and motions for entry of separate and final judgment. For the reasons that follow these motions are DENIED.
2. The parties have submitted extensive factual materials as well as exhaustive legal briefs. It is unnecessary to review the facts in detail. It is sufficient to state that the plaintiffs decedent was an elderly woman who died as a result of a ruptured, abdominal aortic aneurysm over 12 hours after arriving at the Emergency Room (ER) of St. Vincent’s Hospital. She presented at the ER during the early morning hours of July 3, 2000 and was evaluated by the defendants at about 10:40 a.m. The defendants were first and second year University of Massachusetts Medical School (UMMS) residents on a required surgical rotation at St. Vincent’s Hospital. The decedent’s initial complaint was back pain radiating to her abdomen. The defendants assessed the decedent between 6-7 hours after her arrival, and concluded that her condition was consistent with bilaiy colic despite the findings of an abdominal CT scan which plaintiff maintains suggested otherwise. The defendants made plans to discharge the decedent. At least one of the *643 defendants consulted with the decedent’s private attending physician who was a member of the Fallon Clinic and not a public employee of the University. There is no evidence that the defendants consulted with or were supervised by a physician administrator employed by UMMS in connection with their care and treatment of the plaintiffs decedent.
3. There is evidence in the record that establishes that the defendants were required to act in accordance with the rules and regulations promulgated by the Trustees of the University of Massachusetts and that even while working at St. Vincent’s Hospital and even in exercise of independent judgment in their treatment of patients, that judgment was always subject to the right of ultimate control by the University of Massachusetts Medical School. There is ample evidence in the record suggesting that the defendants were subject to the administrative control of UMMS, and were in a relationship with UMMS that had many of the hallmarks of public employment. However, there is no evidence that the defendants consulted with or were supervised by an employee or agent of UMMC, and evidence exists that the defendants made the judgment to discharge the decedent entirely on the basis of their own independent judgment after consulting with her private attending physician.
4. The central question raised by the defendants’ motion for summary judgment is the applicability of the immunity doctrine under G.L.c. 258, §2. This is a question of fact. A defendant physician is not required to demonstrate that the public employer supervised or directed each discrete act performed by the employee physician in order for the immunity doctrine to apply. The central question is whether the public employer “directs and controls the physician’s treatment of the patient.” Williams v. Hartman, 413 Mass. 398, 400 (1992). In this case, when the facts are viewed in the light most favorable to the plaintiff, notwithstanding the administrative control exercised by the public employer over the activities of the defendant and the general assertion by the defendants that the public employer had the authority to exercise supervision and control oyer the defendant, there is a genuine question of fact about whether the defendants were under the direction or supervision of the public employer in terms of their activities with respect to the care and treatment of the plaintiffs decedent. Thus, on the record before the court, summary judgment is not appropriate. Accord, Litchfield v. Bayley, Worcester Superior Court C.A. No. 2000-02277 (September 2, 2004) (18 Mass. L. Rptr. 223), and cases cited.